U.S. BANKRUPTCY COURT
DISTRICT OF OREGON
**F I L E D**
**June 11, 2008**
Clerk, U.S. Bankruptcy Court

**Below is an Opinion of the Court.**

_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) Bankruptcy Case |
|  | ) No. 04-37320-rld13 |
| DONALD BRIAN DOLPH, | ) |
|  | ) |
|                     Debtor. | ) |
| _____ ) |  |
|  | ) |
| JIM SCHACHER, | ) Adversary Proceeding |
|  | ) No. 07-03326-rld |
|                     Plaintiff, | ) |
|     v. | ) |
|  | ) |
| DONALD BRIAN DOLPH, | ) |
|  | ) MEMORANDUM OPINION |
|                     Defendant. | ) |
| _____ ) |  |

This adversary proceeding ("Adversary Proceeding") was filed by the plaintiff Jim Schacher ("Mr. Schacher") seeking to impose a constructive trust on certain assets of the debtor defendant Donald Brian Dolph ("Mr. Dolph"). The Adversary Proceeding trial (the "Trial") was held on June 4, 2008. At the Trial, Mr. Schacher's Exhibits 1-86 and Mr. Dolph's Exhibits A-J all were admitted. In addition, the court took judicial notice of its finding, based on evidence presented at the

Page 1 - MEMORANDUM OPINION

adjourned confirmation hearing on December 2, 2004, that the value of Mr. Dolph's residence (the "Residence") was $143,500. See Docket No. 37 in the Main Case, Case No. 04-37320-rld13 ("Main Case").

Prior to the Trial, the court reviewed the parties' trial memoranda and the authorities cited therein. At the Trial, the court heard the testimony of witnesses presented by both parties and the arguments of counsel. Having carefully considered the parties' arguments in light of the evidentiary record from the Trial and relevant legal authorities, this Memorandum Opinion sets forth the court's findings of fact and conclusions of law under Fed. R. Civ. P. 52(a), applicable in the Adversary Proceeding pursuant to Fed. R. Bankr. P. 7052.

### Factual Background

"He that troubleth his own house shall inherit the wind." Proverbs, 11:29

This Adversary Proceeding is the latest battleground in an inheritance dispute among stepbrothers and stepsisters that has gone on for years.

Mr. Schacher is the duly appointed personal representative of the Estate of Patricia M. Schacher in Multnomah County Circuit Court probate case # 0308-91347, which was filed in August 2003 and is still pending. Patricia M. Schacher ("Patricia") was the mother of Mr. Dolph and the stepmother of Mr. Schacher. Patricia married William O. Schacher ("William"), Mr. Schacher's father, on June 2, 1970. On November 14, 1988, William and Patricia entered into an Agreement to Execute Wills ("Agreement to Execute Wills") that provided that if one predeceased the other, all property of the deceased spouse would pass to the survivor,

Page 2 - MEMORANDUM OPINION

but upon the death of the survivor, the probate estate would be allocated one-third to Patricia's children and two-thirds to William's children. Exhibit 2, at 12-13. Paragraph 4 of the Agreement to Execute Wills further provided that: "Each of the parties agree[s] that no modification shall be made to the provisions contained in their joint Wills except by written agreement." Exhibit 2, at 12. On the same date, Patricia and William each had prepared, and executed, a will consistent with the provisions of the Agreement to Execute Wills. Exhibit 2, at 1-11. Under each will, the survivor between William and Patricia was appointed as the personal representative of the estate, but the alternate personal representative under each will was William's daughter, Linda Ahlstrom. Exhibit 2, at 3 and 9. The Agreement to Execute Wills superseded a prior agreement between William and Patricia, dated June 2, 1970, to execute mutual wills that provided for distributions from the ultimate survivor's estate to be allocated one-fourth to Patricia's children and three-fourths to William's children. Exhibit 1, at 11-12.

William died on February 4, 1992. On the date of his death, neither the Agreement to Execute Wills nor his will, dated November 14, 1988, had been amended. Thereafter, Patricia had prepared, and executed, two codicils to her will: On March 3, 1992, less than 30 days after William's death, Patricia signed a codicil appointing Mr. Dolph as the personal representative of her estate in place of William's daughter, Ms. Ahlstrom. Exhibit 3. On February 2, 2001, Patricia signed a codicil providing for distributions of $30,000 each to Mr. Dolph and her daughter, Marilyn Feik, prior to the distributions among her children and William's children, as provided for in her will dated November 14, 1988.

Page 3 - MEMORANDUM OPINION

Exhibit 4, at 1. The codicil stated that Patricia already had distributed during her lifetime $30,000 to her daughter Janis Churchill aka Janis Cates. Exhibit 4, at 1. Patricia died on July 3, 2003.

In 1992, Mr. Dolph was divorced and moved in with Patricia. In 1995, Patricia authorized Mr. Dolph to sell a 1985 Ford pickup truck and RV trailer that had belonged to William, resulting in net proceeds of approximately $19,000 that Mr. Dolph was allowed to retain. Mr. Dolph used those funds to make the down payment and pay closing costs for his purchase of the Residence.

On August 20, 2001, Patricia changed the beneficiary designation on an IRA account at Merrill Lynch, holding appreciated IRA funds received from William at his death, to make Mr. Dolph a 50% beneficiary. Exhibit 20. Mr. Dolph received his designated portion of the IRA account funds after Patricia's death, in the amount of $21,540.42, net of taxes. Exhibits 29, 39, and 51, at 1.

Before Patricia's death, Mr. Schacher was informed by William and Patricia's long-time neighbor and friend, Ron McAtee, that Patricia was dissipating assets to her children. In fact, on cross-examination, Mr. McAtee testified that Patricia told him that she was not going to give anything to Mr. Schacher's kids, and she did not like them.

Mr. Schacher was able to obtain copies of the 1988 wills and the Agreement to Execute Wills, but was not able to obtain copies of Patricia's codicils until after Patricia's death. Shortly after Patricia's death in July 2003, Mr. Schacher retained counsel to represent his interests regarding Patricia's estate. Exhibit 22. On August 1, 2003, Mr. Schacher's counsel wrote to Warner Allen, who had represented

Page 4 - MEMORANDUM OPINION

Mr. Dolph in his divorce proceedings and had been contacted by Mr. Dolph to initiate probate proceedings for Patricia's estate, advising that counsel considered the March 3, 1992 codicil to Patricia's will, changing the alternate personal representative from Linda Ahlstrom to Mr. Dolph, to be legally unenforceable in light of the terms of the Agreement to Execute Wills. Exhibit 24, at 1. Mr. Schacher's counsel further advised that he had no opposition to Mr. Allen filing a petition to admit Patricia's will to probate, but would oppose any motion to have anyone other than Mr. Schacher appointed as personal representative. Exhibit 24, at 2, and Exhibit 25. Shortly thereafter, Mr. Allen filed a petition for admission of Patricia's will to probate and for the appointment of Mr. Dolph as personal representative of the estate. Exhibit 26. The battle lines were drawn.

After contested proceedings in the probate court, Mr. Schacher was appointed as the personal representative of Patricia's estate on October 3, 2003. Exhibit 53, at 1. The record reflects that the parties sparred over a series of property issues, with Mr. Dolph turning over to Mr. Schacher miscellaneous personal property items and used furniture. Exhibits 58 and 62-64. It is particularly telling in considering how the protracted disputes between the parties have been fought out that Mr. Schacher and Mr. Dolph engaged in a short, intense and bitter exchange at the Trial (before the court put a stop to it) over the disposition of a used 48-inch television set that was last seen in Patricia's retirement center room some time before her death.

Ultimately, Mr. Schacher, in his capacity as personal representative of Patricia's estate, sued Mr. Dolph and his two sisters

in Multnomah County Circuit Court for damages totaling $230,252.60 (the "Probate Litigation"). Exhibit 66. The claim against Mr. Dolph individually for distributions received from Patricia and her estate totaled $75,111.70, itemized in paragraph 7 of the Probate Litigation complaint as follows:

| | | |
|---|---|---:|
| 1) | 1992 transfer of 1984 Chrysler wagon | $ 2,500.00 |
| 2) | 1992 transfer of 1973 Dodge Charger | $ 2,000.00 |
| 3) | 1995 transfer from sale of 1985 Ford pickup and trailer | $19,000.00 |
| 4) | 1993-2001 transfers from Merrill Lynch account 311-59F456 | $ 9,333.70 |
| 5) | 1993-2001 transfers from Wells Fargo accounts | $ 1,640.00 |
| 6) | 1993-2001 transfer from Yosemite Bank account | $ 300.00 |
| 7) | Distribution from Merrill Lynch IRA account | $30,338.00 |
| 8) | Series EE Bond | $10,000.00 |
| | TOTAL | $75,111.70 |

Exhibit 66, at 3-4.

Before the Probate Litigation came to trial, Mr. Dolph filed his chapter 13 bankruptcy petition on July 8, 2004. Exhibit 73 at 1. In his Schedule F listing of unsecured claims, Mr. Dolph listed Mr. Schacher's claim as undisputed in the amount of $75,112. Exhibit 73, at 6. Mr. Schacher filed a proof of claim in Mr. Dolph's bankruptcy in behalf of Patricia's estate. Exhibit 74. Mr. Schacher's claim was by far the largest unsecured claim listed by Mr. Dolph in his schedules. Mr. Schacher's claim set forth the principal amount of the claim against Mr. Dolph at $65,111.70 plus $10,000 for the Series EE Bond in Mr. Dolph's name. Exhibit 74, at 2. The proof of claim also estimated the "Total Net Value of the [Probate] Estate" at $438,808.61, to be split 2/3

Page 6 - MEMORANDUM OPINION

to William's children and their descendants and 1/3 to Mr. Dolph and his sisters. Exhibit 74, at 2. Mr. Dolph's share of Patricia's estate, calculated from Mr. Schacher's proof of claim, is 1/3 of $146,254.91, or $48,751.64. Exhibit 74, at 2.

On December 15, 2006, the Multnomah County circuit court entered a judgment in favor of Mr. Schacher against Mr. Dolph's sister, Marilyn Feik, in the amount of $88,319.97, plus interest at the Oregon state judgment rate of 9%. Exhibit 77. The record does not reflect how much, if anything, Mr. Schacher has collected from Ms. Feik on his judgment against her. The record further does not reflect that Mr. Schacher has obtained a judgment or collected anything in behalf of Patricia's estate on his claims against Mr. Dolph's other sister, Janis Cates.

Mr. Dolph has completed payments under his confirmed chapter 13 plan, and Mr. Schacher received payments on his bankruptcy claim, to which no objection was filed, totaling $14,519.99. Exhibit 80, at 2.[1] The $10,000 Series EE Bond in Mr. Dolph's name was found by Mr. Schacher when he had Patricia's safety deposit box drilled open following her death. Mr. Schacher was granted relief from stay in order to realize upon the Series EE Bond in behalf of Patricia's estate by order of this court entered on October 29, 2004. Main Case Docket No. 33.

## Jurisdiction

This court has jurisdiction to hear and enter a final judgment in the Adversary Proceeding under 28 U.S.C. §§ 1334 and 157(a) and (b)(1)

---

[1] Apparently, no other unsecured claims were filed or allowed in the case.

Page 7 - MEMORANDUM OPINION

and (2)(B) and (O).

## Issues

1. Is Mr. Schacher's pursuit of a constructive trust remedy barred by laches?

2. Is Mr. Schacher entitled to prejudgment interest on his claims in behalf of Patricia's estate?

3. Has Mr. Schacher met his burden of proof to establish that a constructive trust should be imposed?

4. If a constructive trust is imposed, what should the judgment amount be, and on what asset(s) should the constructive trust be imposed?

## Discussion

At the outset, some preliminary matters need to be addressed.

First, Mr. Dolph's chapter 13 case was commenced before Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23. Consequently, the more liberal provisions of the pre-BAPCPA chapter 13 "superdischarge" under 11 U.S.C. § 1328 apply, and as recognized by counsel for Mr. Schacher during oral argument at the Trial, Mr. Schacher's claim for the imposition of a constructive trust is, in effect, the last arrow in Mr. Schacher's quiver available to aim at Mr. Dolph. All of Mr. Schacher's other claims that have been asserted or that could have been asserted against Mr. Dolph in the Probate Litigation will be permanently enjoined and precluded by Mr. Dolph's chapter 13 discharge.

In addition, among the defenses argued by counsel for Mr. Dolph in his trial memorandum was the assertion that the "strong-arm" powers of

Page 8 - MEMORANDUM OPINION

a trustee under 11 U.S.C. § 544(a)(3) preclude the imposition of an equitable constructive trust, at least as to the Residence, based on the chapter 13 trustee's status as a hypothetical bona fide purchaser from the point in time when Mr. Dolph's chapter 13 petition was filed. After the court advised the parties of its tentative positions on the arguments advanced by the parties at the beginning of the Trial, before the presentation of testimony, Mr. Dolph's counsel expressly waived that argument, and the court will not address it further in this Memorandum Opinion.

1. <u>Mr. Schacher's claim to impose a constructive trust is not barred by laches</u>.

Mr. Dolph argues that the Adversary Proceeding to impose a constructive trust on his assets is time-barred, applying the doctrine of laches, and the complaint should be dismissed because Mr. Schacher delayed too long in bringing the Adversary Proceeding after obtaining full knowledge of relevant facts regarding Mr. Dolph's receipt of asset transfers. Mr. Dolph asserts that Mr. Schacher had full knowledge of the transfers from Patricia and her estate to him at the latest by the date of confirmation of Mr. Dolph's chapter 13 plan, December 20, 2004. The Adversary Proceeding was filed more than three years later on December 31, 2007. It is Mr. Dolph's position that it is not fair for Mr. Schacher to have waited to file the Adversary Proceeding until Mr. Dolph had essentially completed his chapter 13 plan obligations, after approximately three and one-half years of plan payments. The delay has resulted in substantial prejudice to Mr. Dolph by increasing his expenses in chapter 13 and delaying his discharge. Mr. Dolph argues that the

court should apply by analogy the Oregon two-year statute of limitations for fraud or deceit under O.R.S. § 12.110(1). Under that standard, the Adversary Proceeding complaint was filed too late.

Both parties recognize that laches is an equitable defense, citing Menard v. Menard, 180 Or. App. 181, 42 P.2d 359 (Or. Ct. App. 2002).

> [I]t is well established in Oregon law that mere lapse of time does not constitute laches. The question is whether the enforcement of the claim would be equitable. This is to be determined by an examination of all of the circumstances of the particular case. The factor of greatest significance is the presence or absence of injury to another. Indeed, the Oregon courts have repeatedly stated that such injury is an essential element of the defense. (citations omitted).

West Los Angeles Inst. for Cancer Research v. Mayer, 366 F.2d 220, 228 (9th Cir. 1966).

As counsel for Mr. Schacher points out in his supplemental trial memorandum ("Supplemental Memorandum"), to which Mr. Dolph's counsel objected because it was filed the day before the Trial, the right of Patricia's estate to bring a constructive trust claim expressly was reserved in the order ("Confirmation Order") confirming Mr. Dolph's chapter 13 plan (see Main Case Docket No. 38), and Mr. Dolph cannot have been surprised, and should have been prepared, when Mr. Schacher asserted that right and filed the Adversary Proceeding. The court has considered the Supplemental Memorandum and takes judicial notice of the Confirmation Order.

However, in addition, waiting until plan payments were essentially complete before the parties had to confront Mr. Schacher's

Page 10 - MEMORANDUM OPINION

constructive trust claims may have saved them time and money, or at least did not increase their expenses. At plan confirmation, the parties did not have more than an estimate of what distributions would be made under Mr. Dolph's plan on Mr. Schacher's claim. It is theoretically possible that when distributions under the plan were complete, Mr. Schacher might have decided not to pursue the constructive trust claims at all. It is also possible that if such claims had been brought earlier, the court would have abated their pursuit while plan payments were made, so that the plan distributions would not be dissipated in legal wrangling. The court agrees with Mr. Schacher that Mr. Dolph and his counsel could not have been surprised by the constructive trust claims asserted in the Adversary Proceeding. In these circumstances, Mr. Dolph did not suffer such prejudice as would support a laches defense, and the court finds that it would be inappropriate to dismiss the Adversary Proceeding as a matter of equity, applying the doctrine of laches.

2. <u>Mr. Schacher is not entitled to prejudgment interest on his constructive trust claim</u>.

The asset transfers in issue between the parties extend over a considerable period of time and reach back at least until 1992. Mr. Schacher asserts that the estate is entitled to prejudgment interest at the 9% Oregon state judgment rate from the date of each transfer with respect to which a constructive trust is imposed. Such a result would be contrary to Ninth Circuit law.

Imposition of a constructive trust is an equitable remedy, and such a "trust" is not a property interest until its existence has been determined by a judicial decision.

Page 11 - MEMORANDUM OPINION

> A constructive trust is a remedy; as such, it is inchoate until its existence is established by court order. Elliott v. Frontier Properties (In re Lewis W. Shurtleff, Inc.), 778 F.2d 1416, 1419 (9th Cir. 1985) ("No state court decree imposing a [constructive] trust exists in the present case; thus appellants' entitlement to such a remedy is inchoate, at best."); North American Coin, 767 F.2d at 1575; Airwork Corp. v. Markair Express, Inc. (In re Markair, Inc.), 172 B.R. 638, 642 (9th Cir. BAP 1994)....Because it is a remedy, a constructive trust cannot affect rights in the res until it is imposed. (emphasis in original).

Taylor Assoc. v. Diamant (In re Advent Management Corp.), 178 B.R. 480, 488 (9th Cir. BAP 1995).

A constructive trust judgment in this Adversary Proceeding would in effect establish the principal amount of the constructive trust res that would bear interest at the federal judgment rate from the date that the judgment is entered.

3. Mr. Schacher has met his burden of proof to establish that a constructive trust should be imposed.

Under Oregon law, the party seeking to impose a constructive trust bears the burden of proof to establish each of three elements:

> (1) the existence of a confidential or fiduciary relationship; (2) a violation of a duty imposed by that relationship; and (3) failure to impose the constructive trust would result in unjust enrichment.

Hollen v. Fitzwater, 125 Or. App. 288, 292, 865 P.2d 1298 (Or. Ct. App. 1993), rev. den., 319 Or. 80, 876 P.2d 783 (1994), as quoted in Brown v. Brown, 206 Or. App. 239, 251, 136 P.3d 745 (Or. Ct. App. 2006). A constructive trust is imposed by a federal court if appropriate under the applicable standards of underlying state law. See, e.g., Murphy v. T. Rowe Price Prime Reserve Fund, Inc., 8 F.3d 1420 (9th Cir. 1993). The

Page 12 - MEMORANDUM OPINION

court will address each of the three elements for imposing a constructive trust in Oregon in turn.

### A. Fiduciary relationship

Mr. Schacher alleges that Mr. Dolph engaged in a conspiracy with Patricia after William's death to divert assets from William's children to Patricia's children. Mr. Dolph's position is that he did not breach any duty in accepting gifts from his mother, and there is no evidence that he acted in any way to influence his mother in making such gifts to him. However, at least from 1995, when Mr. Dolph received approximately $19,000 from Patricia to allow him to purchase the Residence, Mr. Dolph was aware that Patricia was making substantial gifts of assets to her children. Patricia nominated Mr. Dolph to serve as personal representative of her estate on her death, and Mr. Allen filed a probate petition at Mr. Dolph's request, applying for an order appointing Mr. Dolph as the personal representative of Patricia's estate. Mr. Schacher only was appointed personal representative of the estate after probate court proceedings contested by Mr. Dolph. In his trial memorandum, counsel for Mr. Dolph concedes that a fiduciary relationship "likely did exist." The court finds based on the record presented at Trial that Mr. Schacher has met his burden of proof to establish the existence of a fiduciary relationship between Mr. Dolph and Patricia's estate.

### B. Breach of duty

Following Patricia's death, when Mr. Dolph was working with Mr. Allen to initiate probate proceedings, the letter communications from Mr. Schacher's counsel to Mr. Allen, commencing on August 1, 2003, alerted

Mr. Dolph both to the argument that appointment of Mr. Dolph as personal representative was contrary to the Agreement to Execute Wills and that Mr. Schacher contended that Patricia's children had been the recipients of inappropriate transfers of assets from Patricia. See Exhibits 24 and 25. Yet, during the period while the contest to determine who would serve as personal representative of Patricia's estate was playing out, Mr. Dolph arranged for distributions to himself and his sister, Marilyn Feik, of all funds from the Merrill Lynch IRA account. Mr. Schacher challenged the IRA transfer as inappropriate in the Probate Litigation, and Mr. Dolph included the entire damages claim asserted against him by Mr. Schacher in the Probate Litigation as undisputed in his bankruptcy schedules. In these circumstances, the court finds that Mr. Schacher has met his burden of proof to establish that Mr. Dolph breached a duty to Patricia's estate.

    C.   Unjust enrichment

Mr. Dolph does not contest that he received approximately $75,112 from Patricia and/or her estate. Based on the calculations contained in the proof of claim filed by Mr. Schacher in Mr. Dolph's bankruptcy case, Mr. Dolph's estimated share of Patricia's estate is approximately $48,751.64. From this evidence in the record, the court finds that Mr. Schacher has met his burden of proof to establish that Mr. Dolph was unjustly enriched from the asset transfers he received from Patricia and/or her estate. Accordingly, the court ultimately finds that all of the elements required for the imposition of a constructive trust in this Adversary Proceeding have been met.

/ / /

4. What is the appropriate remedy to impose?

The court starts from the proposition that the transfers received by Mr. Dolph from Patricia and her estate total $75,111.70, as alleged by Mr. Schacher in the complaint in the Probate Litigation. See Exhibits 66 and 74, at 2. Mr. Dolph does not dispute that total. See Exhibit 73, at 6. However, Mr. Schacher concedes that Mr. Dolph is entitled to a $10,000 credit for the Series EE bond in his name that was recovered by the estate, and the estate received a total of $14,519.99 from Mr. Dolph's chapter 13 plan payments. See Exhibit 80, at 2. Deducting those credits from the $75,111.70 total, leaves a balance of $50,591.71.

As previously noted, Mr. Dolph's estimated legitimate share of Patricia's estate, calculated from the proof of claim filed by Mr. Schacher in Mr. Dolph's bankruptcy case, is $48,751.64. In his testimony and during argument from his counsel, Mr. Schacher asserted that the court cannot rely on that number because the estate is still attempting to collect its judgment against Mr. Dolph's sister, Marilyn Feik, and no judgment, let alone recovery, has yet been obtained against Mr. Dolph's sister, Janis Cates. Accordingly, Mr. Schacher would have this court impose a constructive trust on the Residence for the full amount of $50,591.71 that the estate has not collected on its claim against Mr. Dolph and allow Mr. Dolph to recover in the future his one-ninth share of the net estate whenever it ultimately is settled.

The probate of Patricia's estate has been pending from early August, 2003 with no end in sight. From argument, the court understands that Mr. Schacher and his siblings have received no distributions from

Page 15 - MEMORANDUM OPINION

the probate estate, a state of affairs that undoubtedly has exacerbated the bad feelings that have given rise to this litigation. However, frankly, the court does not understand why Mr. Schacher cannot apply to allow distributions from available estate assets. The court further does not believe that equity can or would be served by sanctioning, in effect, the taking of Mr. Dolph's home, after he has complied fully with the requirements of his chapter 13 plan and is ready to be discharged, and requiring him to participate in a modern-day reenactment of <u>Jarndyce v. Jarndyce</u> from Dickens' <u>Bleak House</u>.

The only evidence presented at the Trial as to Mr. Dolph's legitimate share of Patricia's estate is from Mr. Schacher's proof of claim, that estimates Mr. Dolph could expect to receive $48,751.64. Subtracted from the balance, after credits, of the estate's claim against Mr. Dolph, the court calculates that he has been unjustly enriched to the extent of $1,840.07, an amount well within the amounts of any of the larger transfers from Patricia or her estate to Mr. Dolph challenged by Mr. Schacher, including the transfer of the funds to enable Mr. Dolph to make the down payment on purchase of the Residence and the IRA transfer. The court specifically rejects the argument that a constructive trust should be imposed on the Residence to the extent of $50,591.71 or even the approximately $19,000 transferred to Mr. Dolph in 1995, which he used to acquire his interest in the Residence, because there is no evidence in the record that Mr. Dolph has been unjustly enriched in such amounts. In addition, imposing such a remedy, requiring Mr. Dolph to transfer equity in his Residence currently and wait for a recovery from the estate, is unworkable in the absence of a settlement because a condition to

Page 16 - MEMORANDUM OPINION

confirmation of Mr. Dolph's chapter 13 plan, incorporated in the Confirmation Order, was that Mr. Dolph abandon any claim to a distribution from Patricia's estate. See Main Case Docket No. 38, at 3.

### Conclusion

Based on the foregoing review of the evidence presented at Trial and analysis of the arguments made by the parties, the court concludes that a constructive trust should be imposed in favor of Mr. Schacher, as personal representative of Patricia's estate, on Mr. Dolph's Residence, the one asset acquired using assets transferred from Patricia to Mr. Dolph with available equity value, in the amount of $1,840.07. The court will prepare the judgment to be entered, consistent with the conclusions set forth in this Memorandum Opinion, after a further hearing at which the parties' input as to the form of the judgment will be requested by the court.

###

cc:  Richard J. Parker
     Brian Wheeler
     Brian D. Lynch
     U.S. Trustee

Page 17 - MEMORANDUM OPINION